and in *Western Union Telegraph Co.* v. *Brown & Randolph Co.,* 154 *Ga.* 229 (114 S. E. 36). That section and that decision deal with the rights of successive purchasers from the owner of property covered by a lien. In such a case the parcels should be charged in the inverse order of their alienation. In the case under consideration there was no sale of the land covered by the Morrison security deed by the grantor therein to successive purchasers. This land went by descent to the sole heir of the grantor in that security deed. It then went by descent from her heir to his heirs. There was a division of this land in kind by the latter among themselves. In that division a portion of this land went to the heir under whom the bank claims. By express stipulation in the security deed from this heir to the bank, the latter took the land therein embraced subject to the Morrison security deed. All that the bank can claim thereunder is this equity or its proceeds. Clearly, in these circumstances, the principle embraced in the above-cited section of the Code and decision is inapplicable to the facts of this case.

Applying the above principles, the court erred in directing a verdict for the defendant.

*Judgment reversed. All the Justices concur.*

---

DUBBERLY, mayor, *et al.* v. MORRIS *et al.*

GILBERT, J. Under the pleadings and the evidence the court did not err in granting a temporary injunction.

*Judgment affirmed. All the Justices concur.*

No. 5390. NOVEMBER 13, 1926.

Injunction. Before Judge Sheppard. Tattnall superior court. March 2, 1926.

B. W. Morris, R. R. Purcell, and B. E. Dasher filed their equitable petition against the mayor and councilmen of the City of Glennville, alleging that by an appropriate election in said city bonds in the amount of $17,000 had been voted for the construction of a sewerage system, which bonds had been sold for $17,500; that the city made a contract with one C. M. Burkhalter to install three miles of said sewerage system for the sum of $21,232.50,

Municipal Corporations, 28 Cyc. p. 1742, n. 6.

which was $3,732.50 in excess of the amount realized from the sewerage bonds; that at the time of making said contract said city did not have on hand sufficient funds that could be lawfully used to defray the same; and that unless prohibited said city would levy a tax to pay said debt, which was illegal in that it would require more than one fifth of one per cent. of the taxable property to pay the same. Petitioners prayed for an injunction to prevent the city from levying any such tax or paying from the city treasury said debt of $3,732.50, the excess over the amount received from said sewerage bonds. In their answer the defendants denied that the taxable property of said city was as low in amount as petitioners claimed. They alleged that the city had outstanding bonds in the sum of $35,000, and when said sewerage contract was made the city had set apart all sinking-funds required for all prior bonds; and that when the contract was made the city had in local banks the entirety of the sum named in it, and still had said sum less amounts paid on said contract, and had levied no tax and intended to levy no tax for same.

The court granted a restraining order. On the subsequent interlocutory hearing the plaintiffs offered in evidence the affidavit of Morris deposing, among other things, that said city had formerly issued bonds for building a schoolhouse, in the sum of $10,000; that some years later said school property was sold for $10,000, and $5,000 of this sum was paid out to retire half of said bonds, and the other $5,000 was placed in the city treasury to retire the remainder thereof; that by special resolution or ordinance it was voted that said deposit of $5,000 should be used for no other purpose than the paying of said school bonds; but that the city intended using said deposit of $5,000 in the defraying of said sewerage contract. The defendants offered an affidavit by one of their number and two others, to the effect that on the date the sewerage contract was let the city had on deposit in local banks, in addition to a small checking account and certain interest and sinking-funds, the sum of $22,095.76, including proceeds from the sewerage bonds, and that the levy of no tax was contemplated to meet said contract. The following statement was inserted in the record at the direction of the court: "It was agreed by the attorneys for the plaintiffs and the defendants that the $22,095.76

consisted of the proceeds of the sale of the sewerage bonds, $17,500, and the sum of $5,000 which was the remainder of the proceeds of the sale of the school-house lot, and which had been set apart by the mayor and aldermen of the City of Glennville on December 15, 1922, as a part of the sinking-fund for certain bonds for building a school building; that the question to be determined by the court was whether the fund of $5,000 could be legally used for the purpose of paying any portion of the sewerage contract." The court granted an interlocutory injunction, reciting in its order an excerpt from the act of 1911, authorizing the City of Glennville to issue bonds for school purposes (Ga. Laws 1911, pp. 1249-1250), a part of which reads: "If any school property of said city be sold, the funds arising therefrom shall be reinvested in other property for school purposes or applied to the liquidation of said bonds;" and holding that in view of this act none of the school money could be diverted to the purposes of sewerage construction. To this judgment the defendants excepted.

*J. T. Grice* and *W. T. Burkhalter,* for plaintiffs in error.

*P. M. Anderson,* contra.

---

## ROGERS *v.* KIMSEY *et al.*

1. Where pending a levy on land, and before sale under the execution, the defendant therein applied to the ordinary for the setting apart to him, as head of a family, of a homestead in part of this land, and the application was duly allowed, and at the time and place of execution sale the defendant's attorney announced to the public that the land could not lawfully be sold, because 80 acres of the 109 acres levied on had been set apart as a homestead, and because of litigation, whereupon the sale proceeded, and the plaintiff in execution bought the land, paid the price bid, and received a deed from the sheriff, and on the next day the county surveyor made a survey and plat of the 80 acres so set apart, which plat was recorded one day later and within the fifteen days allowed by statute, the sale and purchase of the parcel thus set apart were made subject to the homestead right.

2. It was error to refuse an injunction to prevent dispossession of the head of the family from the 80 acres set apart as a homestead.

No. 5507. NOVEMBER 13, 1926. REHEARING DENIED NOVEMBER 25, 1926.

Petition for injunction. Before Judge Tarver. Whitfield superior court. May 25, 1926.

---

Homesteads, 29 C. J. p. 981, n. 29; p. 982, n. 60.